The judgment of the court was pronounced by
Slidell, J.
On the 7th of May, 1839, the plaintiff and her husband, with James Leake aod his wife, executed a mortgage in favor of the Canal and Banking Company on a tract of land belonging to James Leake, and on a number of slaves belonging to the plaintiff, Mrs. Rucker, to secure the payment of a joint and several bond given by all those parties to the bank for $6000, being the amount of a loan made to them by the corporation.
*501 On the 6th of June, 1839, the same parties executed a mortgage in favor of the defendants, A. Ledoux &/■ Co., to secure the payment of a joint and several note for $10,000, previously given by them to that firm.
There can be no doubt that the plaintiff's slaves were liable to seizure and sale in satisfaction of the first mortgage, the contract being one which she was authorized by the terms of the bank charter to enter into. The 23d section of the charter is as follows: “ That in all hypothecary contracts or obligations entered into by any individual with or in favor of the said company, according to the true intent and meaning of this act, it shall be lawful for the wife of such individual to bind herself jointly and in solido with him; and in such case, the property and rights of the said wife, either dotal or of any other description, shall be affected by said contracts or obligations: Provided, that the said wife be of the age of majority at the time of entering into such contracts or obligations.” Acts of 1831, p. 54, sec. 23.
The plaintiff’s husband was bound for the whole sum loaned, and she was authorized to bind herself to the same extent. See Bank of Louisiana v. Farrar, 1st Ann. 53.
It must be assumed, for the purposes of the present investigation, that the mortgage granted to A. Ledoux Co. could not have been enforced on the plaintiff’s slaves; the sum which it was given to secure not having been shown to have turned to her benefit.
The bank took out an order of seizure and sale upon their mortgage, in virtue of which they seized and were about to sell the land of Leake, when on the 7th February, 1844, A. Ledoux Co. paid the debt due to the bank, and took a subrogation to all the bank’s rights under their mortgage. Thus, the plaintiffs became the holders of both of the mortgages, which are the oldest upon the property which they affect. Both of them could be enforced upon the land, but only one of them, viz : the bank mortgage, could be executed upon the plaintiff’s slaves.
On the 9th of March, 1844, A. Ledoux Sf Co. obtained an order of seizure and sale upon the mortgage in favor of the bank, in virtue of which they caused the slaves of Mrs. Rucker to be seized; and on the 11th of April following obtained a similar order upon the mortgage in their own favor for $10,000: under which the land alone was seized and sold for $11,466, which was imputed by the sheriff ’s return to the extinction of their mortgage, leaving a small surplus.
Mrs. Rucker instituted the present suit to enjoin the sale of her slaves, alleging that the object of A. Ledoux Co. in purchasing the bank mortgage was to arrest the sale of the land which the bank was about to make, and the application of its price to the extinction of the bank debt. In her pleadings filed subsequent to the sale under the seizure of A. Ledoux Co., she claims, that the proceeds of the land be first applied to the payment of the bank mortgage, and that her slaves be entirely liberated from the operation of both mortgages.
She further charges, that an agreement was made between Ledoux Co., her husband, and one Cotton, by which it was stipulated that the sale under the mortgage of Ledoux Sf Co.- was to be made merely for the purpose of enabling Ledoux Sf Co. to make a good title to Cotton, who was to have become the purchaser for $16,500; and upon the payment of $5000 of the price, the slaves of the plaintiff were to have been liberated from both mortgages. That Ledoux Sf Co. have prevented the contract from being carried into effect, although Cotton was ready and able to perfect it, and actually paid a part of the price; and that *502 Ledoux 8c Co. having themselves purchased and retained the land, they are now bound to release the mortgages as far as they affect her slaves.
Ledoux 8c Co. filed an answer, and converted the proceeding into a suit in the via ordinaria. The court below perpetuated the injunction, and decreed that the proceeds of the sale of the land should be first applied to the extinction of the bank mortgage, and that the plaintiff should be released from all liability upon the note for $10,000. From this judgment Ledoux 8c Co. have appealed.
The alleged contract between Rucker, Ledoux & Co. and Colton, which, it is contended, operated the plaintiffs’ release from liability, is shown to have been an imperfect project of an agreement proposed to be entered into originally by the counsel of the parties, but never authorized or assented to by the defendants. It appears that it was modified on the day of the adjudication of the land, at which time the defendants and Cotton appeared alone to have been parties to it; that it remained unsigned; and that Colton never performed any part of its stipulations, or took any steps to obtain title to the land. The payments, alleged to have been made by Cotton on account of the price, were the -proceeds of a part of the crop growing on the land at the date of the adjudication, which, as we have heretofore held, belonged to the defendants. See Ledoux et al. v. Anderson, 2d Ann. 558; Ledoux et al. v. Cooper, Ib. 586.
The effect of the transfer by the Canal Bank to Ledoux 8c Co. was to unite the two debts in the hands of the same creditor; but the debts themselves remained distinct, and the rights of the creditor under them were different. The acquisition by Ledoux & Co. of the first mortgage did not increase or diminish their rights as second mortgagees. The inscription of the first mortgage affected Ledoux 8c Co. with notice of its existence, and of all legal consequences resulting from its provisions and terms.
The Canal Bank was at liberty to select of which debtor in solido it would demand payment, and upon which property it would enforce its mortgage. But if it had selected to enforce payment from Mrs. Rucker, she, upon such payment, would be subrogated and entitled to exercise those rights which appertain to her position as a debtor in solido with others. By the cession of actions she would be considered in some degree as purchasing the right of the creditor. Creditor non in solutum accepit, sed quodam modo ? Nomen creditoris vendidit.
The law creates a legal subrogation between debtors in solido, because although each is bound to the creditor for the whole, yet the debt is presumed to be common, and it would be inequitable to throw upon one the whole burthen without recourse. This subrogation carries with it a resort to the securities given by each. They are the accessories to the debt, and the debtor more readily binds himself for the whole debt when the law assures him that if forced to pay the whole he will have his full recourse against his co-debtors for their share. Pothier Oblig. No. 521. 6 Toullier, 735. 7 Toullier, 147. Civil Code, 2099, 2157, 2158. Howe v. Fraser, 2 R. R. 424. Of this subrogation the creditor cannot deprive the debtor. Pothier Oblig. No. 275.
If Mrs. Rucker had paid either voluntarily or by compulsion, she would have been subrogated to the mortgage of the bank to the extent of Leake's portion of the debt; and the rank of her mortgage would have been the first. Although bound to the bank for the whole debt, she was on the face of the contract the quasi-surety of Leake, inter se, for his share of the burden, and looked to his mortgage pro tanto to protect her against loss. This right is the legal result of *503 the contract with the Canal Bank as notarially executed and recorded. It was reciprocal. Leake had the same recourse against her for her portion.
There has been an attempt to show that in point of fact Leake and Mrs. Rucker, although debtors in solido to the bank, were inter se not co-debtors in solido, but that Leake was the' principal debtor and Mrs. Rucker his surety. But if this were so, it is not shown that Ledoux Co. had knowledge of this relation; and as second mortgagees, they are only to be bound by the relations between Leake and Mrs. Rucker as it existed on the face of the recorded contract with the Canal Bank, namely, the relation of co-debtors in solido.
The position, therefore, of the parties is this: Ledoux Co. cannot devote the entire proceeds of Leake’s lands to a second mortgage, so as to destroy Mrs. Rucker’s right of subrogation. But on the other hand, Ledoux 4' Co. as second mortgagees of Leake, have a right to enforce against Mrs. Rucker the liability of the property which she mortgaged to the bank for her obligation in solido; provided they give her the benefit of her right of subrogation for Leake’s share. Ledoux 4* Co. being second mortgagees, cannot say that Mrs. Rucker’s property shall bear the whole burden of the Canal Bank debt, nor can Mrs. Rucker say that Leake’s property shall bear the whole of the burden.
The next question is, what is the extent of Mrs. Rucker’s right of subrogation ? Ledoux 4 Co. contend, that if Mrs. Rucker has any right of subrogation, it is only to the extent of one-fourth, because, say they, Leake and his wife, and Rucker and his wife, having bound themselves in solido, are to be regarded as four debtors, and Mrs. Rucker would; therefore, have her action against Leake only for his proportion, or one-fourth.
We concur in this view; and the consequence is, that Ledoux Sf Co., who are to be considered as holding in their hands the price of the adjudication oí Leake’s land, are bound to apply that amount to the payment of one-fourth of the Canal Bank debt; and for the remaining three-fourths are entitled to proceed against the property mortgaged by Mrs. Rucker.
It is proper to add that the insolvency of the other co-debtors in solido is not proved; so that the case is not brought under the operation of that article of the code which provides that if one of the creditors in solido be insolvent, the loss occasioned by his insolvency must be equally shared among all the other solvent co-debtors and him who has made the payment. C. C. 2100.
The evidence does not establish an acquiescence by Mrs. Rucker in the imputation of payment made by the sheriff’s return.
It is therefore decreed, that the judgment of the district court be reversed; and it is further decreed, that the slaves (together with their increase, if any there be, since the date of the act of mortgage) described in the act of mortgage executed on the 7th day of May, 1839, by James Leake and Mary Leake, and James Rucker and Anne C. Rucker, in favor of the New Orleans Canal and Banking Company, whereof a copy is on file in this cause, be seized and sold to pay to the said A. Ledoux 4" Co. the sum of $4590, with interest thereon until paid, from the 16th day of April, 1843, at the rate of eight per cent per annum, and costs of these consolidated suits in both courts. And it is further decreed, that a certain note, whereof a copy is of record in this cause, executed on the 6th day of May, 1839, by James Leake, Mary Leake, James Rucker and Anne C. Rucker, in favor of A. Ledoux 8f Co. for $10,000, with interest, be declared of no force and effect, so far only as the same purports to bind the said Anne C. sRucker.